UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEFINA RIOS,

    Plaintiff,

v.                                            Case No. 2:06-cv-536-FtM--DNF

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

    Defendant.
_____/

**OPINION AND ORDER**[2]

The Plaintiff filed her application for a period of disability and Disability Insurance Benefits under Title 42 U.S.C. Sec. 405(g) of the Social Security Act on July 21, 2004, alleging disability beginning April 22, 2004. (Tr. 50-52). The claim was denied initially and upon reconsideration. (Tr. 35; 40). On April 11, 2006, a hearing was held before Administrative Law Judge Michael S. Maram. On June 16, 2006, ALJ Maram issued his decision which denied the Plaintiff benefits. (Tr. 16-22). The Plaintiff filed a Request for Review of the hearing decision and the Appeals Council denied same on August 11, 2006, making the ALJ's decision the final decision of the Commissioner. [Tr. 3-5].For the reasons set out herein, the decision is **AFFIRMED**.

---

[1]    Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Ann B. Barnhart as the defendant in this action. No further action need to be taken to continue this suit by the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2]    Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated January 16, 2008. (Doc .# 17).

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." (followed by the appropriate page number), and the parties have filed legal memorandums.

**I.    SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW.**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On July 21, 2004 , the Plaintiff filed her application for Disability Insurance Benefits and alleged disability beginning April 22, 2004.   The Decision of ALJ  Maram, dated June 15, 2006, denied the Plaintiff's claim for benefits.  (Tr. 16-22).  At Step 1, the ALJ found the Plaintiff  has  not engaged in substantial gainful activity since her alleged onset of disability. (Tr. 17).  At Step 2,  the ALJ found that the Plaintiff had the following severe impairments: hypertension, coronary artery disease, depression and arthritis.  20 C.F.R. § 404.1520(c).  At Step 3, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in Appendix 1, Subpart P,  Regulation No. 4. 20 C.F.R. 404.1520(d), 404.1525.1526.    The ALJ determined

that the Plaintiff has the residual functional capacity to "occasionally lift and carry up to twenty pounds, frequently lift and carry up to ten pounds. Sit up to six hours, stand or walk up to two hours and is limited to simple repetitive tasks". At Step 4, the ALJ determined Plaintiff was able to perform her past relevant work as an injection mold tender and a shoe lace machine operator. (C.F.R. §404.1565). Accordingly, the ALJ did not consider Step 5 and found Plaintiff was not disabled. (Tr. 31, 32).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838-9 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II.    REVIEW OF FACTS**

The Plaintiff was born on March 19, 1944 and was sixty-two years of age at the time of the hearing. The Plaintiff testified that she was unable to speak or understand English and was educated in Columbia up to the fifth grade.[3] The Plaintiff's past relevant work experience was as a machine operator making shoe laces, a wood sander and an injection mold tender. [Tr. 75-78. The Plaintiff alleges disability beginning on April 22, 2004, due to heart and chest pains, high blood pressure, insomnia, depression, anxiety, arthritis, right eye vision problems and fatigue. [Tr. 59].

The Plaintiff testified that she stopped working in June of 2004 because she was laid off. The Plaintiff stated she tried to apply for other jobs but was "depressed" and "very nervous". [Tr. 201]. The Plaintiff further testified she was laid off because she was always absent and missed a lot of work due to her depression and "because of pain that I had from the arthritis. I used to get a lot of headaches and a lot of pain in my back".

The record shows that Dr. J.B. Valdepenas was the Plaintiff's treating physician for several years. The Plaintiff visited Dr. Valdepenas approximately four to five times per year. Many of the progress notes for the time period of 2000 to 2003 are illegible for the most part. However, the records that are legible show that the Plaintiff was seen for neck and knee pain, depression and chest pain. [Tr. 96-103].

---

[3] The Plaintiff testified she went to fifth grade in Columbia. [Tr. 197]. However, on a Social Security Administration form she indicated she completed eleventh grade [Tr. 65], and in an interview with a consultative examiner she stated she had completed high school and completed one year of college. [Tr. 104]. The Plaintiff denied at the hearing that that information was correct. [Tr. 206-207].

The physical examination report provided by Dr. Valdepenas include comments on the Plaintiff's mental condition. [Tr. 182-187]. Dr. Valdepenas diagnosed the Plaintiff with depression resulting in insomnia and lack of concentration and that the Plaintiff had slight limitations in her ability to remember and carry out simple instructions, maintain attention and concentration, interact appropriately with co-workers and respond appropriately to changes. {Tr. 20-21, 186].

On November 19, 2003, the Plaintiff went to Rhode Island Medical Imaging for a Lumbar Spine view because of pain. IMPRESSION: [M]ild L4-5 Degenerative Disc Disease with spondylolytic changes from L-2 to L-4. possible bilateral L-5 pars interarticularis defect, which do not result in any degree of spondylolisthesis". [Tr. 102].

The Plaintiff treated with Dr. W. Azer of the Renaissance Medical Group from April to August 2004 for depression, hypertension, and gastroenteritis. The Plaintiff complained of weakness, chest pain and depression. Dr. Azer prescribed Paxil on a trial basis. [Tr. 108-110]. An echocardiogram performed by Dr. Yousef H. Georgy, M.D., on April 10, 2004, reported, "[Borderline LAW, thickened [sigmoid[ Basal Septum, normal left ventricle size and global systolic function. Basal inferior hypokinesis". [Tr. 112].

On August 11, 2004, the Plaintiff was seen by Nina B. Nizetic, M.D. This interview was conducted in Spanish and Dr. Nizetic completed a psychiatric report. The Plaintiff stated that she only drives occasionally and arrived to the interview by taxi cab. The doctor found the Plaintiff was properly dressed and her gait and posture were normal, and that she maintained a proportionate weight. The Plaintiff advised the doctor that she had high blood pressure, arm

pain and recurring headaches. Further, that she felt depressed, isolated, and had crying spells and lacked any interest in day-to-day activities. The Plaintiff advised she lives with her husband of 13 years and has no children. The Plaintiff started working at the age of 16 in a factory. The Plaintiff stated she does housework with her husband and goes shopping with her husband. The Plaintiff stated she goes to church, likes to watch TV or read. The Plaintiff's mental status revealed she was "[o]riented regarding time, place and person. She evidenced diminished concentration. Her memory for recent events was fair. Her memory for distant events seemed preserved. Ms. Rios did calculation, gave correct answers to similarities and differences, offered adequate interpretation of common proverbs. Her general information is fair. She has insight into her condition. Her judgment is not impaired". DIAGNOSTIC IMPRESSIONS: "[A]xis 1: Major Depressive Disorder, Mild, 296.33; Axis II: None; Axis III: C/O HBP, Recurring Headaches, Arm Pain; Axis IV: Problems with Access to Healthcare Services, Occupational Problems; Axis V: 60 GAF". SUMMARY: Ms. Rios is a 60 year old woman, who complained of HBP, arm pain, and recurring headaches. She presented with short periods of discomfort characterized by depressed mood, isolation, crying spells, and lack of interest in daily activities. She evidenced disturbed sleep, diminished concentration, fair short term memory, occasions suicidal ideation, and feelings of worthlessness and hopelessness. As presented, her symptoms suggest a major depressive disorder" [Tr. 20, 104-05].

The Plaintiff was examined by Dr. William Polumbo on December 13, 2004, at the request of the Social Security Administration. The Plaintiff complained of heart problems hypertension and arthritis. The Plaintiff advised she had suffered an myocardial infarction five

or six years previously. The Plaintiff advised both knees bothered her because of arthritis. The Plaintiff stated she was able to walk two city blocks" [w]ith not too much problem". The Plaintiff's medications including Zoloft, Paxil, Norvasc and Avaprop. [Tr. 169]. The Plaintiff had full use of her upper and lower extremities. The Plaintiff's gait was slow but steady. PROBLEMS: "[1.] Question of heart problem. Her history is rather vague and strange. She claims that she was admitted for an myocardial infarction only overnight in the hospital and never underwent cardiac catheterization. The seems inconsistent with the diagnosis of an acute myocardial infarction, however, her cardiogram is abnormal. She may have suffered a (sic) silent at some other time. Her symptoms of chest pain are also very vague. Some of her pain seems to be associated with chest wall discomfort/arthritis, however, in view of the abnormal EKG, I would suggest that her physical activity be severely limited until a full cardiac work-up is performed. [Tr. 170]. Dr. Palumbo further noted "[m]oderate to severe crepitus with some discomfort involving the left knee". [Tr. 168].

On March 31, 2005, the Plaintiff went to Kent Hospital, Warwick, Rhode Island for chest and lumbar spine x-rays. "[C]HEST: Two views are interpreted without comparisons. IMPRESSION: There are low lung volumes which limits evaluation of the cardiomediastinal structures. The pulmonary vascularity is normal. No pulmonary consolidations or pleural effusions are identified. Note made of a slight scoliosis of the thoracic spine. Osteopenia. There are degenerative changes of the shoulders". [Tr. 182]. "[L]UMBAR SPINE: Two views are interpreted without comparisons. IMPRESSION: Osteopenia. There are no compression fractures. The disc heights are maintained. Facet joint degenerative changes are mild in the lower lumbar spine". [Tr. 182].

**III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW:**

    **A.    THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY "RFC" DETERMINATION IS CONTRARY TO THE EVIDENCE OF RECORD, CONFLICTS WITH THE VOCATIONAL EXPERTS "VE" TESTIMONY AND THE "RFC" SET FORTH BY THE ALJ AT THE HEARING.**

Plaintiff asserts the Administrative Law Judge's determination of the Plaintiff's RFC in his written decision[4] is not the same as the RFC as set forth in the hypothetical question he presented to the vocational expert at the hearing. The hypothetical question presented to the vocational expert at the hearing was to assume an exertional capacity for a "restricted range of light work activity". [Tr. 210]. The vocational expert then testified that the Plaintiff's past work[5] classified as light, could be performed within the parameters of the ALJ's hypothetical question and therefore the Plaintiff could do her past work. [Tr. 210].

The ALJ's RFC finding as provided in the written decision would allow the Plaintiff to perform her former work as an injection mold tender as she described such work at the hearing. The Plaintiff testified that her work as an injection mold tender involved sitting and standing and when the Plaintiff was tired of standing she would sit down. [Tr. 200}. Thus, the

---

    4    In his written decision, the ALJ found that the Plaintiff can "occasionally lift and carry up to twenty pounds and frequently lift and carry up to ten pounds. She can sit up to six hours and stand or walk up to two hours." [ Tr. 19]. The Plaintiff argues that Social Security Ruling 83-10 defines light work as lifting no more than twenty (20) pounds at a time with frequent lifting or carry of objects weighing up to ten (10) pounds and that clearly the RFC presented to the VE at the hearing is significantly more restrictive.

    5    "...as a shoe lace machine operator was light to medium/semi-skilled and the job of injection molding machine tender as light/unskilled)". [Tr. 12].

Plaintiff failed to prove that she could not perform her past relevant work as an injection mold tender, as actually performed. 20 C.F.R. §404.1520(f); *Doughty v. Apfel* 245 F.3d 1274, 1278 (11th Cir. 2001).

While it is true that the RFC determination in the written decision is not the same as the RFC set forth by the ALJ in the hypothetical question to the VE, the ALJ denied the Plaintiff at step 4 of the sequential evaluation process as the Plaintiff was found to be capable of performing her past relevant work as it is actually performed. Even though the ALJ obtained VE testimony, this testimony was not necessary because the ALJ was not required to obtain VE testimony when considering whether the Plaintiff could perform her past relevant work. Lucas v. Sullivan, 918 F.2d 1567, 1573 (11th Cir. 1990). Since the Plaintiff could perform her past relevant work (and the VE's testimony was not necessary) remand to have the VE respond to hypothetical questions which mirror the ALJ's "RFC" finding would serve no practical purpose and would not alter the ALJ's decision. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). *Ward v. Commissioner of Social Security*, 211 F.3d 652 L656 (1st Cir. 2000).

Finally, the Plaintiff presented no evidence to rebut the Commissioner's determination that she could perform her past relevant work as an injection mold tender. The Plaintiff did not meet her burden at step 4. *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th cir. 1991). The burden never shifted to the Commissioner to prove the existence of a significant number of other jobs, which the Plaintiff could perform.

### B.   THE ALJ FAILED TO PROPERLY EVALUATE THE PLAINTIFF'S MENTAL CONDITION

The Plaintiff argues that the ALJ omitted several key elements of psychiatrist Dr. Nina Nizetic's evaluation which particularly bear on the Plaintiff's mental functioning. Additionally, the Plaintiff asserts that the other treating physicians corroborate the Plaintiff's ongoing depression which are consistent with Dr. Nizetic's opinions.

Dr. Nizetic diagnosed the Plaintiff with major depressive disorder and assigned an estimated Global Assessment of Functioning (GAF) score of 60, which indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  Dr. Nizetic opined  that the Plaintiff had mild restrictions in activities of daily living and was able to manage funds without help. [Tr. 20, 104, 105].  Dr. Nizetic found the Plaintiff demonstrated adequate insight and judgment. [Tr. 20, 105].  The Plaintiff showed no evidence of abnormal psychomotor activity. [Tr. 105].  The Plaintiff reported suicidal  ideations  but never had suicidal gestures. [Tr. 20, 105].  Also, the Plaintiff was able to relate to her family, friends and neighbors and was oriented to time, place and person. [Tr. 105].

The ALJ also considered the evidence in the record provided by Dr. Valdepenas, the Plaintiff's treating physician.  Dr. Valdepenas, provided a report that diagnosed the Plaintiff with depression that resulted in her insomnia and lack of concentration. [Tr. 187].  Dr. Valdepenas found the Plaintiff had slight limitations in her ability to remember and carry out simple instructions, maintain attention and concentration or interact appropriate with co-workers. [Tr. 20-21, 186].

The assessments completed by the state agency psychologists dated September and November 2004 were considered by the ALJ. Both the psychologists found the Plaintiff's mental impairments were "severe," but did not list a level of severity as they only resulted in mild to moderate functional limitations. [Tr. 20, 21, 127-40, 141-44, 145-46, 148-51, 152-65]. The ALJ determined that the Plaintiff had mild restriction of activities of daily living, maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace. [Tr. 19]. The ALJ determined the Plaintiff could perform simple, repetitive type tasks. The ALJ's assessment of the Plaintiff's RFC was in accordance with the appropriate legal standards and provided a clear statement of the Plaintiff's mental abilities. For these reasons the Administrative Law Judge found the Plaintiff was not under a disability, as that term is defined in the Social Security Act and regulations.

## IV.  CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.

**THEREFORE,**

The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. §§ 405(g) and the Clerk of the Clerk be directed to enter judgment consistent with this opinion, and, thereafter, to close the file.

Rios v. Commissioner
2:06-cv-536-FtM-MMH-DNF

**DONE and ORDERED** at Ft. Myers, Florida, this 18th day of February 2008.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to
All Counsel of Record